## BISHOP v EAST OHIO GAS COMPANY

Ohio Appeals, 8th Dist, Cuyahoga Co

No 17694. Decided April 14, 1941

Payer, Corrigan, Bleiweiss & Cook, Cleveland, for plaintiff-appellee.

Jones, Day, Cockley & Reavis, Cleveland, for defendant-appellant.

## OPINION

By LIEGHLEY, PJ.

Plaintiff instituted an action in the Court of Common Pleas, claiming that the defendant, through its agent, unlawfully and forcibly broke into the basement of his residence on the 29th day of April, 1935, for the purpose of turning off the gas and that during the process the agent in some way broke and destroyed a liquid denominated "Almalac" by the plaintiff. The trial resulted in a verdict of $10,500.00 in favor of the plaintiff, which through remittitur was reduced one-half.

The plaintiff, over objection, was permitted to testify in respect to matters covering a wide range. He told of coming to this country in 1903 and bringing with him a few ounces of a certain liquid called "Yoghurt". After a few months he took up his residence in Detroit where he attended college, obtained degrees particularly with reference to chemistry and pharmacy. He testified that for a period of ten years he experimented with this "Yoghurt" with a view to improving and perfecting a liquid, generally known as sour milk, with larger life-giving properties and more healthful effects.

He testified that he spent five and a half hours per day over a period of about ten years, totalling 20,000 hours, in developing this liquid called "Almalac". Without reciting full details, the time alleged to have been spent by him in this manner, the time spent by him in acquiring the education about which he testified, covering a large number of pages in the bill of exceptions, was fully exploited with a result that the acts, efforts and time spent were magnified and emphasized to an unusual degree before the jury.

He claims that as a result of his experiments and analyses he isolated and incubated various bacilli, in number fourteen different germs, and eventually retained five as suitable for his purpose. He told of being in Cleveland since about 1916 and entering upon the production of "Almalac" which he claims he sold to various drug stores

and through them to the public. He described the healthful contents of "Almalac" and its alleged life-giving qualities. Many other details, efforts and experiences were permitted to be enumerated before the jury.

The result of all this wide scope of inquiry from the plaintiff and his answers to the questions propounded resulted in emphasizing the enormity of his loss by the breaking and destroying by the agent of the defendant of his sample of "Almalac" on the day in question, which he claims is now impossible of reproduction.

This whole story went to the jury on some theory of a right to show a background which is permissible in the larger number of cases, but in the kind and character of this case, with the claim of impossibility of reproduction outstanding, the jury is given opportunity for wide guess and speculation and the situation was reasonably calculated to lead the jury to give compensation for his education and hours spent in experimentation as a measure for item of damages to be awarded to the plaintiff.

The jury was instructed in the event of a verdict for the plaintiff, to award such amount as would make the plaintiff whole; to award such sum as would compensate plaintiff for the loss he sustained. If "Almalac" became impossible of reproduction by reason of the alleged breakage by the agent of the defendant, what was the worth in dollars? What pecuniary loss did the plaintiff suffer by reason of its destruction? His loss must be expressed in dollars to cover the value of the thing lost, not the hours of labor or efforts made in its production, nor time spent in his preparatory education.

One man may take years in experiments and efforts to produce a workable model or efficient sample. Another of equal ability may wisely or luckily strike upon the thought or idea resulting in an equally good model or effective sample or prescription in thirty days. If time and effort in the production of a model by an inventor, or a sample or formula by a chemist, is to be included as an item of damage for the destruction of the model or the formula perfected by the chemist or inventor, the one who succeeded in his efforts in a few days would be at a great disadvantage.

Plaintiff claims that he perfected "Almalac" from the "Yoghurt" he brought from Europe in 1903. It may be true, but hard to believe, that an outstanding chemist does not retain the formula or analyses by which he perfected "Almalac" from "Yoghurt". He did not lose his learning and experience by the destruction of this "Almalac". He lost a few ounces of "Almalac" from which and by means of which as a "starter" he might produce more "Almalac".

The definition of "Yoghurt" found in Websters Dictionary, Edition 1936, is illuminating in the light of claims made by plaintiff and informs us that "Yoghurt" is very common in the Levant, that "there the fermentation is initiated with a starter saved from a previous lot." The small quantity of "Almalac" plaintiff claims to have had on hand was a "starter" developed from "Yoghurt".

"Yoghurt" was commonly and extentively used throughout the Balkans in 1935 and it seems strange to us that "Yoghurt" at that time and for a year or two thereafter could not have been obtained during the period before the war and before shipment was barred by the war, if it ever has been barred.

As stated, all this history and experience of the plaintiff and his efforts in perfecting the so-called "Almalac" which plaintiff himself named as a sour milk, went to the jury with little or no guidance in respect to its purpose or its use. This history was of such nature that it was reasonably calculated to lead the jury to carry into the amount of damages compensation for his efforts educationally and experimentally. It is our belief and opinion that this verdict of the jury is excessive, appearing to have been given

under the influence of passion or prejudice.

The plaintiff testified that his damage amounted to $50,000.00. One Matousek, a druggist, and an acquaintance of plaintiff, testified that it was worth $35,000. The defendant offered evidence to show that a prescription for producing "Almalac" could be purchased for $2.00. The verdict of the jury in no way is responsive to the testimony.

This is not a personal injury case in which the jury has wide latitude in fixing the amount of compensation for injuries. This is a case in which it is claimed a formula or sample was destroyed, resulting in destruction of a business. What is the value of that business? The figures reflecting his income submitted by the plaintiff do not warrant a large verdict as compensation measured by the income, less allowance for work, shown by the plaintiff.

It is contended by the plaintiff that this is one of the cases wherein market value is not the true rule. It is claimed that this is such a case that the worth of the article should be measured by what it is worth to the plaintiff. The schedule of the figures produced by the plaintiff show an income as low as $350.00 in one year with an average for a number of years of $600.00. These figures capitalized by the usual method would reflect a small saleable value. The very figures submitted by plaintiff of his gross income from the sale of "Almalac" over the years show a gradual decline in annual gross receipts reflecting a diminishing value and appraisal of his alleged loss.

But the plaintiff is grounding his claims to a large extent upon the peculiar ingredients or bacilli contained therein, which he says he isolated with the result that great health and life-giving qualities are possessed therein. It is urged on the one hand that this "Almalac" is a special product by reason of its chemical content and special features. Yet the witness Matousek, the druggist, on the other hand, was permitted to testify that it was worth $35,000.00 although he never analyzed it, never read anything about "Almalac" or lactic acid milks. He didn't know of what "Almalac" was composed and didn't know its intended curative effects. All he really knew is that he sold some of this product through his store.

By reason of the particular and special claims of the plaintiff of the qualities possessed by this product "Almalac" it is clear that this expert Matousek was wholly without qualification to appraise the value of this product.

The judgment in this case is reversed for the reason that it is excessive, appearing to have been influenced by passion or prejudice, and the case remanded for a new trial. Also for the reason that there was error in the admission of evidence.

SKEEL, J., concurs.
MORGAN, J., dissents.